**ADENDUM TO EXHIBIT 1**

This letter was originally sent by the officer who completed my PSR to the RDAP psychology staff at FPC Duluth. Unfortunately, I amnot able to get a copy of this due to prison rules, and was forced to transcribe it by hand from my central file of the FBOP while being supervised by my case manager. This letter can be obtained directly through the BOP. It is relevant tommy argument and should be weighed in this matter.

RECEIVED BY MAIL
APR 2 1 2025
CLERK U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

SCANNED
APR 2 1 2025
U.S. DISTRICT COURT MPLS

Exhibit 1

Gary Smith
US Probation officer who wrote PSR
Letter drafted and sent to RDAP DTS on 12/12/24

"Purpose of the letter is to provide additional information
not otherwise included in the PSR"

"When Fields was interviewed for his pretrial bail
release on 6/7/23, prior to his initial court
appearance, he reported consuming alcohol since age 16
and 'during various periods of his lifetime, his use
of alcohol has been problematic'."

"The evaluation of Fields' alcohol use history, in combo
with his convictions for driving under the influence
of alcohol on 2 separate occasions resulted in
pretrial supervision conditions that included restrictions
of "refraining from any use of alcohol" and "submitting
to random substance use testing as required."

"Additionally, it should be noted that Fields' second driving
under the influence of alcohol offense occured on
6-13-2016 which is during the period of his intant
federal offense being committed."

"Further, during the PSR interview later conducted
on 10-27-2023 Fields acknowledged his history
of driving under the influence of alcohol
convictions and described a desire for a "healthier
relationship with alcohol."

"Fields now indicates following the advice of his attorney to refrain from identifying a more significant history of alcohol consumption. I cannot confirm what private conversations Mr Fields had with his attorney but I can confirm that his attorney became gravely ill with cancer during his case and then died approximately 1 month after his sentencing hearing. Consequently, Fields appeared at his sentencing hearing with a substitute attorney and the attorney did not request a judicial recommendation for RDAP eligibility for inclusion on the judgement. Based on my experience, the sentencing judge almost certainly would have included a recommendation to participate in RDAP if requested by Fields at sentencing."

"Finally, paragraph 61 of the PSR references a home visit conducted at Fields' residence. I had a lengthy discussion with Fields during that home visit, but much of the info was not included in the PSR due to time constraints because the visit occured on the evening before his PSR was submitted on 2/2/24. During the discussion Fields was more open about the difficult period of his life with significant financial pressures when he committed the instant offense, and he mentioned an increased use of alcohol as another factor present during the offense and the ongoing FBI investigation."

"Fields now indicates that he has several extended family members with a history of alcohol abuse that contributed to their deaths and page 57 of the PSR inaccurately stated there was no prevalence of substance abuse in his family."

RECEIVED BY MAIL

APR 2 1 2025

CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

SCANNED
APR 2 1 2025
U.S. DISTRICT COURT MPLS

# Exhibit 2

1-16-25: BP8 submitted to counselor Hachey

1-23-25: BP8 rejected and returned to me

1-24-25 BP9 submitted to Counselor Hachey

2-6-25 BP9 rejected by Warden Eischen

8 days↓

2-14-25 BP9 received by Fields + BP10 Form issued

2-20-25 BP10 submitted to mail room via USPS Priority First Class with tracking

Thurs

2-27-25 - BP10 still not scanned for tracking. After complaint mail room they suggest I wait a feid days. I file a "Lost mail" form with USPS.

3-4-25 BP10 First scanned in - MPLS

3-6-25 BP10 received and rejected for not being received 20 days after warden rejected.

3-13-25 BP10 Rejection not received. Hachey suggests waiting before he issues a new BP10 to send in

3-20-25 - still no BP10 rejection received back. Hachey says they are really swamped - won't issue new BP10

3-27 - I ask Hachey for new BP10 because he says he still hasn't received original

back. I tell him if I can't issue a new BPIO I will need to just file with court. 5 minutes later the BPIO is "Found" at Unit Secretary office. Hachey says he will call me "tomorrow morning" to give it to me. This would have been 3/28/25. He never called

4-7-25 - The First time I was able to see Hachey again and he Finally gave me the rejection BPIO along with new BP 10 to resubmit.


Exhibit 3



December 18, 2024

To whom it may concern:

Charles Fields [66628-510] has been attending outpatient therapy since May 2024 to treat co-occurring disorders, including: F10.20 ALCOHOL DEPENDENCE UNCOMPLICATED, F33.2 Major depressive disorder, recurrent, severe without Psychotic features, and F43.10 POST-TRAUMATIC STRESS DISORDER UNSPECIFIED. Charles meets criteria for serious and persistent mental health symptoms which is a term used to describe the complex symptoms of a mental illness that require ongoing treatment and management. Although symptoms may come and go, having a Severe and Persistent Mental Illness requires persistent and intense therapeutic support, especially when a person with SPMI experiences a stressful event in their life. Treatment has focused heavily on managing alcohol use symptoms, implementing coping tools, managing urges, and maintaining sobriety. While at the time of treatment Charles made progress on goals, it was not substantial enough to quit drinking or relieve symptoms. Symptoms of severe alcohol use were still present at the end of services. It is recommended that Charles continue alcohol addiction treatment through the Residential Drug Abuse Program to manage symptoms to reduce the impacts of the disease, prevent symptoms from becoming worse, and

contribute to his ongoing rehabilitation. A higher level of substance use treatment, and detoxification was recommended for Charles at the time of services.

Charles has struggled with substances since he was young, acknowledging alcohol was a part of his childhood for as long as he could remember. It was problematic for him from a young age as evidenced by being charged with driving under the influence at sixteen, continued use, and then another driving under the influence charge at age thirty-six. Charles was so intoxicated at the time of his DUI that he was unable to complete a sobriety test. During treatment Charles reported that he had marital issues due to his substance use. Further there is a family history of problematic substance use, as indicated by numerous family members dying from alcohol use. At the time of services with Charles he reported he had struggled for a long time and reported inability to complete a higher level of care due to taking over his parents' business. Charles made it utmost priority to ensure that while he was incarcerated that his eighteen-year-old son would be able to tend to the farm so as to not cause additional hardship to his wife, and family. Charles reported drinking regardless of knowing the impacts it had on his mental health due to temporarily relieving symptoms of depression, guilt, shame, low mood, anxiety, physical symptoms of shaking, sickness, and increased levels of distress. A higher level of care is medically necessary for Charles Fields to manage his serious and persistent mental health (SPMI) symptoms and prevent further decompensation with his mental health symptoms, alcohol use symptoms, urges to drink, trauma symptoms and help with his long-standing history with substance use.

Diana Finney, LADC, MS, Clinical Trainee

Melissa Cribb, LADC, LPCC, MS.

Exhibit 4

RE: Charles Fields 66628-510

April 7th, 2025

To Whom It May Concern:

I am writing this letter in support of my husband, Charles Fields, and his need to be accepted into the RDAP program. I have known Charles for 27 years and I have seen firsthand the challenges he has faced over the years due to alcohol use, as well as the courage he's shown in seeking help for this problem.

For years, Charles drank socially, and it never appeared to be a cause for concern. However, things really went downhill around 2015. He still drank socially, but just couldn't stop. There were times he was drinking daily and alone; finding him passed out in his recliner or black out drunk stumbling around the house. He'd drink during the day while he was supposed to be working. He'd leave on Saturday morning for golf league, only to spend the entire day after his round at the bar. He'd be completely drunk when we'd want to meet for dinner and refuse to come home with us. Then he'd need to have a drink in the morning to go to church, then have a few more while making Sunday breakfast, that will lead to drinking the rest of the day. He would drink 1.75 bottle of vodka a weekend besides what he'd be drinking at the bar. In 2016, he picked up a DUI, being so drunk he couldn't complete the sobriety test and blowing a .24. This type of drinking continued for years.

Over time, his alcohol use put significant stress on our relationship and family. Having to explain to the kids why dad was talking funny or acting weird. Why dad slept on the recliner because he was too drunk to walk to bed. Having to excuse his behavior to neighbors and friends when he refused to call it a night or getting lost in our neighborhood because he couldn't remember how to walk the 2 blocks home. I'd address my concerns, but he'd make excuses and rationalize why his behavior was acceptable. At times, when he'd wake up not able to recall the day before, he'd feel ashamed and try to make up for things by being supportive and sweet, play with the kids and this led to doing better for a while. However, it never lasted long.

After the FBI raid in 2020, things got bad again for a while. He had to tell the truth about everything that was going on in his business and we had a lot to figure out about our future. It was in this period that things started to change, and Charles talked about being a better person, husband, and father. He expressed a sincere desire to make meaningful and lasting changes in his life. We started seeing a marriage counselor, then he started talking to his own therapist.

In time, he identified how alcohol use was impacting him, and our family, and decided to pursue help. He was diagnosed with Alcohol Disorder Uncomplicated and had several sessions with his therapist before turning himself in to the BOP. During that time, I saw a very positive change in him. He became a kind and supportive husband. He was honest and shared his feeling and struggles. These sessions laid some good groundwork, but he needs additional support to maintain his progress.

Unfortunately, he is still grappling with his alcohol disorder. Charles shared about urges and troubles sleeping, then when he finally gets some sleep, having nightmares and waking up in a sweat. How he still craves a drink, even knowing it's bad for him. These are things he continues to encounter and needs proper support to overcome. I believe if given the opportunity to join the RDAP program, it will provide the structure, support, and resources he needs to build a healthier and more stable future.

Despite the difficulties he's faced, Charles has many admirable qualities. He's intelligent, compassionate, and capable of great personal growth. I am confident that with the right guidance and environment, he will thrive in recovery and become an even more positive force when he returns to us.

I respectfully ask that Charles be allowed to join the RDAP program so he can receive the support necessary for his diagnosed alcohol disorder. This opportunity will give him the tools he needs to maintain long-term sobriety and eventually return to our family healthier and stronger.

Sincerely,

Katherine Fields
Wife of Charles Fields
763-458-2692